THOMAS E. PEREZ
Assistant Attorney General                                JS-6
Civil Rights Division
SAMUEL BAGENSTOS
Deputy Assistant Attorney General
ANDRÉ BIROTTE, Jr.
United States Attorney
JOHN L. WODATCH, Chief
PHILIP L. BREEN, Special Legal Counsel
RENEE M. WOHLENHAUS, Deputy Chief
Disability Rights Section
LEON M. WEIDMAN
Assistant United States Attorney
MICHELE MARCHAND
Assistant United States Attorney
GRETCHEN E. JACOBS
PHYLLIS M. COHEN
U.S. Department of Justice
Civil Rights Division
950 Pennsylvania Avenue, N.W.
1425 N.Y. Avenue Building
Disability Rights Section
Washington, D.C.  20530
Telephone:  (202) 514-9584
Facsimile:  (202) 307-1198
gretchen.jacobs@usdoj.gov
Counsel for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case:  CV 099-01034SJO(SHx) |
| | ) | |
| Plaintiff, | ) | CONSENT ORDER |
| | ) | ON LINE OF SIGHT REMEDIES |
| v. | ) | |
| | ) | DATE: N/A |
| | ) | TIME: N/A |
| | ) | JUDGE:  S. JAMES OTERO |
| AMC ENTERTAINMENT, INC, et al., | ) | |
| Defendants. | ) | |

# Table of Contents

1.    Definitions ....................................................................................2

2.    Settlement of Ongoing Litigation................................................8

  **2.1**   Final Settlement ...............................................................8

  **2.2**   Good Faith Efforts ...........................................................9

  **2.3**   Entry of Final Judgment.................................................10

  **2.4**   Compliance With Consent Order .....................................10

3.    General Requirements for All Stadium-Style Theaters .............12

  **3.1**   Unobstructed View of the Screen ....................................12

  **3.2**   Companion Seating...........................................................12

  **3.3**   Wheelchair Spaces Not Permitted in First Row ...............13

  **3.4**   Relocation of Wheelchair and Companion Seat................14

  **3.5**   Non-Line of Sight Remedial Order Unaffected.................14

  **3.6**   Additional Wheelchair Spaces ..........................................14

4.    Accessibility Requirements for Existing Theaters.....................15

  **4.1**   Fifth Circuit Theaters ......................................................16

  **4.2**   Theaters In Neighborhoods..............................................18

  **4.3**   Theaters Without Neighbors.............................................26

**4.4**   Other Specified Existing Theaters. ............................................30

**4.5**   Notice to Patrons of Modifications to Existing Theaters.....................41

5.   Newly Acquired Theaters................................................................42

**5.1**   Newly Acquired Theaters Located In the Fifth Circuit .......................43

**5.2**   Newly Acquired Theaters Within Existing Neighborhood. ................43

**5.3**   Newly Acquired Theaters Outside Existing Neighborhoods...............44

**5.4**   Notice to Patrons of Modifications to Newly Acquired Theaters ........47

6.   Standards for Future Construction Theaters .................................48

**6.1**   Unobstructed View of the Screen. ......................................48

**6.2**   Integration of Wheelchair Spaces. ......................................48

**6.3**   Relationship of Wheelchair and Companion Seating ..........................48

**6.4**   Location of Accessible Seating In Stadium Section ...........................48

7.   Required Time Frames for Implementation of Consent Order ..................50

**7.1**   Modifications to Existing Theaters ......................................50

**7.2**   Expedited Modifications to Certain Existing Theaters.........................51

**7.3**   Modifications to Newly Acquired Theaters.........................................52

**7.4**   Future Construction Theater Requirements .........................................52

8.   Annual Reports and Other Compliance Matters .........................53

**8.1**   AMC Annual Reports .........................................................53

**8.2**     Inspection of Covered Theaters ........................................................53

**8.3**     Procedures for Resolving Compliance Issues.......................................54

**8.4**     Delivery of Notice to the Parties ......................................................55

9.     Monetary Relief for DOJ Complainants ..............................................56

**9.1**     AMC Monetary Payment ................................................................56

**9.2**     Identification of DOJ Complainants ...................................................56

**9.3**     Disbursement of Checks ..................................................................57

10.     Payment to the United States .............................................................57

11.     Miscellaneous Provisions ..................................................................58

**11.1**     Entire Consent Order ....................................................................58

**11.2**     Public Document..........................................................................58

**11.3**     Consent Order Binding on Parties and Successors in Interest..............58

**11.4**     Other Companies Or Claimants. .......................................................58

**11.5**     Term of the Consent Order. ............................................................58

**11.6**     Severability ................................................................................59

**11.7**     Signatories Bind Parties. ................................................................60

**11.8**     Force Majeure. ............................................................................60

**11.9**     No Protection for Theaters Not Covered by Consent Order................60

**PRELIMINARY MATTERS**

Over a decade ago, the United States filed this action to enforce provisions of the Americans with Disabilities Act ("ADA") against defendants American Multi-Cinema, Inc. and AMC Entertainment Inc. [hereinafter collectively referred to as "AMC"].  AMC has at all times denied any violation of law and nothing in this Consent Order constitutes an admission by AMC of any violation of Title III of the ADA, its implementing regulations, or any allegation made by the United States in this action.  The United States recognizes that AMC has cooperated and demonstrated a commitment to providing persons with disabilities equal access to AMC's stadium-style movie theaters.  The United States and AMC jointly present the following Consent Order on Line of Sight Remedies, which fully resolves all remaining remedial matters in this lawsuit.

WHEREFORE, the Parties agree and stipulate to the Court's entry of the Consent Order on Line of Sight Remedies and final judgment pursuant to Fed. R. Civ. P. 58; and

WHEREFORE, the Consent Order on Line of Sight Remedies provides as follows:

**1.**   **Definitions**

The Parties agree and stipulate that the certain terms shall be defined for purposes of this Consent Order as follows:

**1.1**   "ADA" shall mean and refer to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.

**1.2**   "ADA-Mandated Wheelchair Space" or "ADA-Mandated Wheelchair Seat" shall mean and refer to the number of required Wheelchair Spaces within public assembly areas as set forth in 28 C.F.R. pt. 36, Appendix A, § 4.1.3(19)(a).

**1.3**   "ADA Standards" or "Standards" shall mean and refer to the Department of Justice Standards for Accessible Design as set forth at 28 C.F.R. pt. 36, Appendix A.

**1.4**   "AMC" shall mean and refer to, collectively, defendants American Multi-Cinema, Inc. and AMC Entertainment Inc.

**1.5**   "Auditorium" shall mean and refer to a room in a Stadium-Style Theater Complex with a screen for the public exhibition of motion pictures and seating for some or all movie patrons in the Stadium Section.

**1.6**   "Companion Seat" or "Companion Seating" shall mean and refer to fixed seating within an Auditorium that is located next to a Wheelchair Space as required by 28 C.F.R. pt. 36, Appendix A, § 4.33.3.

**1.7**   "Consent Order" or "Order" shall mean and refer to this "Consent Order on Line of Sight Remedies," including all attached or referenced appendices.

**1.8**   "Cross-Aisle" shall mean and refer to a level pathway between sections of seats in an Auditorium that runs parallel to the screen and is intended for circulation of movie patrons.  A Cross-Aisle may be located either in the Traditional Section or on a Riser in the Stadium Section.

**1.9**   "Designated Neighborhood Theater" shall mean and refer to the one or more Stadium-Style Theater(s) in an AMC Neighborhood designated in accordance with the terms of §§ 4.2(A), 5.2 or 5.3 of this Consent Order.  A full and complete list of Designated Neighborhood Theaters as of the Effective Date is attached to this Order as Appendix C.

**1.10**   "Department" or "DOJ" shall mean and refer to the United States Department of Justice.

**1.11**   "DOJ Complainant" shall mean and refer to a person with a disability (a) whose complaint to the Department of Justice regarding accessibility issues at one or more AMC Stadium-Style Theaters was investigated by the Department and found to be meritorious, or (b) who was identified by the Department of Justice during the course of this litigation and, through subsequent interview or deposition,

determined to have been affected adversely by accessibility issues at one or more AMC Stadium-Style Theaters.

**1.12** "Effective Date" of this Consent Order shall mean and refer to the date on which this Consent Order is entered on the docket by the Clerk for the United States District Court for the Central District of California.

**1.13** "Existing Theater" shall mean and refer to a Stadium-Style Theater Complex that is owned, leased, or operated by AMC as of the Effective Date of this Consent Order. A full and complete list of Existing Theaters as of the Effective Date is attached as Appendix A to this Order.

**1.14** "Fifth Circuit Theater" shall mean and refer to an Existing Theater located within the jurisdictional boundaries of the United States Court of Appeals for the Fifth Circuit (*i.e.*, Mississippi, Louisiana, and Texas). A full and complete list of Fifth Circuit Theaters as of the Effective Date is attached to this Order as Appendix E.

**1.15** "Future Construction Theater" shall mean and refer to any Stadium-Style Theater Complex (or Auditorium therein) for which a certificate of occupancy is issued after the Effective Date, and that is (a) designed and constructed within the meaning of (and subject to any limitations in) 42 U.S.C. § 12183(a)(1) and its implementing regulations by AMC, its architects, or other

4

agents acting on AMC's behalf, or (b) altered within the meaning of (and subject to any limitations in) 42 U.S.C. § 12183(a)(2) and its implementing regulations, by AMC, its architects, or other agents acting on AMC's behalf.

**1.16**   "Mini-Riser" shall mean and refer to a Riser (or pair of Risers), usually six to eight inches in height, located in front of the Stadium Section on which seating is affixed and that provides stepped access to such seats (typically, by one or two steps) separate from the flight(s) of stairs used to access the Stadium Section.

**1.17**   "Neighborhood" or "AMC Neighborhood" shall mean and refer to a group of two or more AMC Stadium-Style Theaters that are within close geographic proximity and that has been designated in accordance with §§ 4.2, 5.2, or 5.3(A) of this Consent Order.  A full and complete list of AMC Neighborhoods as of the Effective Date of this Consent Order is attached as Appendix B.

**1.18**   "Neighborhood Theater" shall mean and refer to the one or more Stadium-Style Theaters in each AMC Neighborhood that have not been jointly identified by the Parties as a Designated Neighborhood Theater.

**1.19**   "Newly Acquired Theater" shall mean and refer to a Stadium-Style Theater Complex purchased, leased, or otherwise acquired by AMC from a third-

party movie theater chain or other non-AMC entity in a transaction completed after the Effective Date of this Consent Order.

**1.20**   "Other Specified Existing Theaters" shall mean and refer to the fifteen Existing Theaters expressly listed in § 4.4 of this Consent Order.

**1.21**   "Physically Impracticable" shall mean and refer to modifications, alterations, or seating relocations that would require demolition of all, or a material portion of, the concrete and/or steel structure forming the Stadium Section of an Auditorium.  Physical Impracticability does not include less extensive modifications or alterations with no material effect on the structure of the Stadium Section, such as: removal of fixed seats; demolition or extension of Mini-Risers in front of the Stadium Section; or construction of ramps to the Stadium Section.

**1.22**   "Riser" shall mean and refer to an elevated tier in an Auditorium that is six inches in height or higher and has fixed seating and/or a Cross-Aisle located on its upper surface.

**1.23**   "Section 4.33.3" shall mean and refer to the regulatory provisions at 28 C.F.R. pt. 36, App. A., § 4.33.3.

**1.24**   "Small Auditorium" shall mean and refer to an Auditorium with seating for less than 150 patrons.

**1.25** "Stadium Section," "Stadium-Style Seating," or "Stadium Seating" shall mean and refer to the portion of an Auditorium in which seats are affixed to a succession of elevated Risers that are accessed by one or more flights of stairs. For purposes of this Order, the Stadium Section does not include Mini-Risers.

**1.26** "Stadium-Style Theater" or "Stadium-Style Theater Complex" shall mean and refer to a facility owned, operated, or leased by AMC that contains one or more Auditoriums with Stadium-Style Seating.

**1.27** "Theater Without Neighbors" shall mean and refer to an AMC Stadium-Style Theater that is located outside the respective geographical boundaries of all AMC Neighborhoods. A full and complete list of Theaters Without Neighbors is attached as Appendix D to this Consent Order.

**1.28** "Traditional Section," "Sloped-Floor Section," or "Traditional Seating" shall mean and refer to the portion of an Auditorium in which seats are affixed to a flat or sloped floor.

**1.29** "Unobstructed View," for purposes of this Consent Order, shall mean and refer to a view of the screen that is not blocked or interfered with by any seats, railings, persons, or other objects. AMC provides most members of the general public with an Unobstructed View to the top ninety percent (90%) of the screen. AMC also uses seated eye heights of 44 inches for patrons in fixed seating and 48

inches for patrons who use wheelchairs when calculating clearances over heads and other actual or potential obstructions between patrons and the movie screen. For purposes of this Order, AMC shall provide patrons who use wheelchairs and their companions with an Unobstructed View to the top ninety percent (90%) of the screen using these same seated eye height values.

**1.30** "Wheelchair Space," "Wheelchair Seat," or "Wheelchair Area" shall mean and refer to a designated space in an Auditorium that is intended for a person who uses a wheelchair to situate him- or herself to view a motion picture.

**1.31** "2010 Standards" shall have the same meaning as set forth in § 36.104 of the Department of Justice's revised regulations implementing Title III of the ADA which were signed by the United States Attorney General on July 23, 2010 and are published at 75 Fed. Reg. 56,236 (Sept. 15, 2010) (to be codified at 28 C.F.R., part 36).

**1.32** "Agreed Date" shall, with respect to Newly Acquired Theaters exclusively, mean and refer to the date of January 1, 2000.

**<u>2.</u>**   **Settlement of Ongoing Litigation**

**2.1**   <u>Final Settlement</u>.  In order to avoid the cost, expense, and uncertainty of protracted litigation on post-remand line of sight remedies and other remaining issues, the Parties stipulate to the terms set forth herein and to entry of this Consent

Order, which shall be final and binding upon them as of the Effective Date, and which shall extinguish all claims for relief based upon, or that could have been based upon, or arisen from, the United States' complaint filed on January 29, 1999, as amended.  Moreover, the United States recognizes that AMC has cooperated and demonstrated a commitment to providing persons with disabilities equal access to AMC's Stadium-Style Theaters.  Nothing in this Consent Order constitutes an admission by AMC of any violation of Title III of the ADA, its implementing regulations, or standards, or any allegation made by the United States in this action.  Nothing in this Consent Order shall prohibit AMC from using the arguments that form the basis of AMC's denials, affirmative defenses, and counterclaims to defend itself in future litigation.  Entry of this Consent Order brings certainty regarding AMC's obligation concerning the placement and location of Wheelchair Spaces at all Existing Theatres, Newly Acquired Theatres, and Future Construction Theaters as defined in, and covered by, this Consent Order.

     **2.2**   <u>Good Faith Efforts</u>.  The Parties shall act in good faith to effectuate the terms of this Consent Order.  Neither party shall take or advocate a position, whether in a third-party action involving an AMC Stadium-Style Theater covered

by this Consent Order or in any other legal proceeding, that contradicts or calls into question the terms of this Consent Order.

**2.3**   Entry of Final Judgment.  This Consent Order shall be a full, complete, and final disposition and settlement of all remedial issues in this action that remain after entry of the Consent Order and Final Judgment on Non-Line of Sight Issues (Dec. 4, 2003) (Docket # 451) [hereinafter "AMC Non-Line of Sight Remedial Order"].  The Parties jointly request that, following entry of this Consent Order, the Court enter final judgment pursuant to Fed. R. Civ. P. 58.  Except as otherwise provided in this Consent Order or the AMC Non-Line of Sight Remedial Order, neither Party shall seek any other form of recompense or sanctions other than as specified in this Consent Order.

**2.4**   Compliance With Consent Order.  The United States acknowledges and agrees that, unless otherwise provided in the AMC Non-Line of Sight Remedial Order, when AMC completes the respective modifications, if any, specified in § 4 of this Consent Order for each Existing Theater and § 5 of this Order for each Newly Acquired Theater, or when AMC opens Future Construction Theaters built in accordance with § 6 of this Consent Order, then each such Theater Complex shall, at the time its respective modifications are completed, satisfy the demands of the United States regarding the location of Wheelchair Spaces and

Companion Seats in AMC's Stadium-Style Theaters covered by this Consent

Order.  If an Existing Theater or Newly Acquired Theater requires no

modifications to comply with this Order, then each such Theater shall be deemed

to satisfy the demands of the United States regarding the location of Wheelchair

Spaces and Companion Seats in AMC's Stadium-Style Theaters either upon entry

of this Order or completion of the acquiring transaction, as applicable. The United

States shall not pursue further enforcement of the ADA or its regulations with

respect to the location of Wheelchair Spaces at the Theater Complexes covered by

this Consent Order so long as such Theaters comply with this Consent Order and,

as applicable, the <u>AMC Non-Line of Sight Remedial Order</u>. The United States

agrees that all Existing Theaters, Newly Acquired Theaters, and Future

Construction Theaters that comply with the provisions of this Consent Order and

the <u>AMC Non-Line of Sight Remedial Order</u> will be deemed to satisfy Section

4.33.3 or §§ 221.2, 221.3, 802.2 and 803.3 of the 2010 Standards (codified at 36

C.F.R., pt. 1191), as applicable.  As to all Existing Theaters, Newly Acquired

Theaters, and Future Construction Theaters, no modifications other than those

specified in this Consent Order and the <u>AMC Non-Line of Sight Remedial Order</u>

shall be necessary to comply with Section 4.33.3 and/or §§ 221.2, 221.3, 802.2 and

803.3 of the 2010 Standards (as applicable).

**<u>3.</u>**      **General Requirements for All Stadium-Style Theaters**

**3.1**    <u>Unobstructed View of the Screen</u>.  All Auditoriums within Existing Theaters, Newly Acquired Theaters, and Future Construction Theaters shall afford patrons seated in ADA-Mandated Wheelchair Spaces and Companion Seating an Unobstructed View of the screen as defined in § 1.29 of this Order.  If a modification to an Existing Theater, Newly Acquired Theater, or Future Construction Theater made pursuant to this Order or the <u>AMC Non-Line of Sight Remedial Order</u> results in an obstructed view of the screen for patrons who use wheelchairs or their companions in any Auditorium, AMC shall make further modifications as necessary (and as otherwise consistent with the terms of this Order) to eliminate the obstruction.

**3.2**    <u>Companion Seating</u>.  Unless otherwise expressly permitted by this Order or the <u>AMC Non-Line of Sight Remedial Order</u>, AMC shall provide Wheelchair Spaces and Companion Seating in Existing Theaters, Newly Acquired Theaters, and Future Construction Theaters in compliance with the terms of this Court's Order Re: Wheelchair and Companion Seating (filed June 23, 2003) (Docket # 446) [hereinafter "<u>AMC Companion Seat Order</u>"].  The <u>AMC Companion Seat Order</u> states that: (a) Stadium-Style Theaters designed before July 1998 shall provide at least one Companion Seat adjacent to every two Wheelchair

Spaces (*i.e.*, 1:2 ratio); (b) Stadium-Style Theaters designed after July 1998 must provide at least one Companion Seat adjacent to each Wheelchair Space (*i.e.*, 1:1 ratio); and (c) Wheelchair Spaces and Companion Seats may be vertically displaced by no more than the height of a single step or Mini-Riser.

     **3.3**   <u>Wheelchair Spaces Not Permitted in First Row</u>.  Unless expressly provided by this Order, no ADA-Mandated Wheelchair Space shall be located in the front row closest to the screen in any Auditorium in an Existing Theater, Acquired Theater, or Future Construction Theater.  AMC shall remove Wheelchair Spaces and Companion Seats from the front row and relocate these seats no closer to the screen than the last row of the Traditional Seating section along an accessible route.  If the size or configuration of an Auditorium makes such relocation Physically Impracticable, then these Wheelchair Spaces and Companion Seats shall be relocated as far from the screen as reasonably possible in the Traditional Section along an accessible route.  ADA-Mandated Wheelchair Spaces and Companion Seats located in the first row of an Auditorium may remain in their current locations when: (i) such seats are located on a Riser; or (ii) the first row constitutes the only row of Traditional Seating in that Auditorium and construction of a ramp to the Stadium Section is not otherwise required by this Consent Order.

**3.4**     Relocation of Wheelchair and Companion Seat.  When, under the terms of this Order, AMC is required to relocate fewer than all of the ADA-Mandated Wheelchair Spaces in any Auditorium, AMC shall select Wheelchair Spaces located closest to the screen relative to other Wheelchair Spaces in that Auditorium for the required work.  If all ADA-Mandated Wheelchair Spaces are currently located an equal distance from the screen, AMC may, at its discretion select the Wheelchair Spaces to be relocated pursuant to this Order.  Further, except as expressly provided in this Order, AMC shall not relocate Wheelchair Spaces or Companion Seats to a row of seating closer to the screen (relative to their existing location) when making accessibility modifications required either by this Order or the AMC Non-Line of Sight Remedial Order in any Auditorium within a Designated Neighborhood Theater or Theater Without Neighbors.

**3.5**     Non-Line of Sight Remedial Order Unaffected.  Except as expressly provided in this Consent Order, any accessibility modifications or other remedial obligations required under the AMC Non-Line of Sight Remedial Order shall remain unaffected by entry of this Order.

**3.6**     Additional Wheelchair Spaces.  Nothing in this Consent Order shall limit the placement of additional Wheelchair Spaces required by state or local codes beyond those mandated by the ADA or its implementing regulations.

**4.**      **Accessibility Requirements for Existing Theaters**

For purposes of this Order, the Parties have agreed to divide AMC's Existing

Theaters into four separate categories, with each category having distinct types of

accessibility modifications.  First, the Parties have agreed to modifications at

specified Fifth Circuit Theaters that are consistent with the Ninth Circuit's decision

in United States v. AMC Entertainment, Inc., 549 F.3d 760 (9th Cir 2008).  See

Consent Order  § 4.1.  Second, in light of AMC's acquisition over the last decade

of more than one hundred Stadium-Style Theater Complexes across the country,

the Parties have identified and grouped other Existing Theaters, based on

geographical proximity, into "Neighborhoods."  Within each Neighborhood, in

turn, the Parties have jointly identified one or more Designated Neighborhood

Theaters for enhanced accessibility modifications.  See Consent Order § 4.2.

Third, in most of the remaining Existing Theaters that do not fall within the

geographical limits of an AMC Neighborhood, the Parties have agreed to a third

set of accessibility modifications.  See Consent Order § 4.3.  Lastly, there is a

residual category of Existing Theaters denominated as Other Specified Existing

Theaters for which theater-specific requirements or modifications are provided.

See Consent Order § 4.4.  None of the modifications made pursuant to this Consent

Order shall trigger any other obligations under the ADA, subsidiary, ancillary, or

otherwise, specifically including, but not limited to, those required under 28 C.F.R. § 36.403.

**4.1** <u>Fifth Circuit Theaters</u>.  The first category of Existing Theaters consists of Theaters located within the jurisdictional limits of the United States Court of Appeals for the Fifth Circuit (*i.e.*, Mississippi, Texas, and Louisiana).  A complete list of Fifth Circuit Theaters as of the Effective Date of this Consent Order is set forth in Appendix E, which is herein expressly incorporated into the terms of this Order.

At these Fifth Circuit Theaters, AMC shall make the specific modifications set forth below in § 4.1(A).  For purposes of this Order, if a Fifth Circuit Theater (or Auditorium(s) therein) is not listed below, AMC shall not be required to make any changes to the Wheelchair and Companion Seats in such Theater (or Auditorium(s) therein) so long as these Seats otherwise comply with §§ 3.1 - 3.6 of this Order.  In any Auditorium within a Fifth Circuit Theater that requires modification(s) to comply with this Consent Order, AMC shall not be required to make such modification(s) in a manner that, as applicable, involves demolition (in whole or in part) of Mini-Risers.

**A.**   <u>AMC (Loews) Fountains 18 (Stafford, TX)</u>

- <u>Auditoriums 1, 2, 11 and 12</u>:  AMC shall move two Wheelchair Spaces from the first row to the fourth or fifth row of the

Traditional Section.  Each of these relocated Wheelchair Spaces shall have one adjacent Companion Seat on the same floor level.  AMC also shall ensure that each of the four ADA-mandated Wheelchair and Companion Seats in these Auditoriums has an Unobstructed View of the screen pursuant to § 3.1 of this Order.

- <u>Auditoriums 3, 4, 9, 10, 13, 14, 15, 16 and 18</u>:  AMC shall move two Wheelchair Spaces from the first row to the last row of the Traditional Section.  Each of these relocated Wheelchair Spaces shall have one adjacent Companion Seat on the same floor level. AMC also shall ensure that each of the relocated ADA-mandated Wheelchair and their respective Companion Seats have an Unobstructed View of the screen pursuant to § 3.1 of this Order. The remaining Wheelchair and Companion Seats in these Auditoriums may remain in their respective locations provided they otherwise comply with §§ 3.1, 3.2(c) & 3.3 – 3.6 of this Consent Order.

- <u>Auditoriums 5, 6, 7 and 8</u>:  The Wheelchair Spaces and Companion Seats in these Auditoriums may remain in their respective locations provided they otherwise comply with §§ 3.1, 3.2(c) & 3.3 – 3.6 of this Consent Order.

- <u>Auditorium 17</u>:  AMC shall move four Wheelchair Spaces from the first row to the last row of the Traditional Section.  Each of these relocated Wheelchair Spaces shall have one adjacent Companion Seat on the same floor level. AMC also shall ensure that each of these relocated ADA-mandated Wheelchair and their respective Companion Seats have an Unobstructed View of the screen pursuant to § 3.1 of this Order. The remaining Wheelchair and Companion Seats in this Auditorium may remain in their respective locations provided they otherwise comply with §§ 3.1, 3.2(c) & 3.3 – 3.6 of this Consent Order.

17

**4.2**     Theaters In Neighborhoods.  The second category of Existing Theaters consists of two or more Theaters located within the same general geographical area, thus forming a "Neighborhood."  A complete list of AMC Neighborhoods as of the Effective Date of this Order is set forth in Appendix B, which is herein expressly incorporated into the terms of this Order.  At these Neighborhood Theaters, AMC shall make the accessibility modifications specified in §§ 4.2(A) - (B) below.

**A.**     Designated Neighborhood Theaters.  The parties have identified one or more Stadium-Style Theaters within each AMC Neighborhood to serve as the Designated Neighborhood Theater(s) for that Neighborhood.  Designated Neighborhood Theaters are subject to enhanced accessibility modifications as specified in § 4.2(A)(1) – (3) below.  A complete list of Designated Neighborhood Theaters as of the Effective Date of this Order is set forth in Appendix C, which is herein expressly incorporated into the terms of this Order.

**(1)**     Stadium Section Accessibility Requirements.  Except as provided in §§ 4.2(A)(1)(a) & (b) below, AMC shall ensure that no less than 75% of the Auditoriums in each Designated Neighborhood Theater have Wheelchair and Companion Seats located in the Stadium Section.  If Auditoriums in Designated Neighborhood Theaters require modification to comply with this requirement,

18

AMC shall use reasonable efforts to select Auditoriums with a variety of sizes and/or seating configurations.  AMC shall relocate as many ADA-Mandated Wheelchair and Companion Seats as practicable (as specified in §§ 4.2(A)(1)(a) & (b) below) in each such Auditorium no closer to the screen than the first row of the Stadium Section.  For Auditoriums in Designated Neighborhood Theaters that already have one or more Wheelchair and Companion Seats located in the Stadium Section, the Wheelchair and Companion Seats may remain in their respective existing locations provided these Seats otherwise comply with  §§ 3.1 - 3.6 of this Order.

> **(a)**   <u>Small Auditorium Exception – AMC-Built Theaters</u>.

If, after taking into account modifications required by § 4.2(A)(1) above to all large Auditoriums (*i.e*., Auditoriums in which the first row of the Stadium Section contains sixteen (16) or more seats) in a Designated Neighborhood Theater designed and constructed by AMC (as identified in Appendix A), such Theater still does not satisfy the requisite Stadium Section accessibility percentage, then AMC shall, in the remaining Auditorium(s) that must be modified to meet this accessibility percentage, locate all ADA-Mandated Wheelchair and Companion Seats based on the following placement considerations in their respective order of priority:

19

**(i)**     First, in Auditoriums which have fourteen (14) or fifteen (15) seats in the first row of the Stadium Section, two Wheelchair and Companion Seats shall be placed no closer to the screen than the first Riser of the Stadium Section, and the remaining Wheelchair and Companion Seats shall be placed as far back from the screen as practicable along an accessible route; or

**(ii)**     Second, if such Theater still has not met the requisite accessibility percentage after taking into account the modifications specified above for larger Auditoriums, all Wheelchair and Companion Seats shall be placed immediately in front of the Stadium Section, or if Physically Impracticable to do so, as far back from the screen as practicable along an accessible route in Auditoriums which have thirteen (13) or fewer seats in the first row of the Stadium Section.

**(b)**     Small Auditorium Exception – Acquired Theaters.

If, after making modifications required by § 4.2(A)(1) to all larger Auditoriums (*i.e.*, Auditoriums with seating for 150 patrons or more), the size or configuration of a Small Auditorium within a Designated Neighborhood Theater acquired by AMC from a third-party theater company

20

(*i.e.*, a Theater Complex that is not identified in Appendix A as having been designed and constructed by AMC) makes it Physically Impracticable to relocate all ADA-Mandated Wheelchair and Companion Seats within the Stadium Section, such Seats shall be located such that:

(i)     As many ADA-Mandated Wheelchair and Companion Seats as space permits are located no closer to the screen than the first row of the Stadium Section, and the remaining Wheelchair and Companion Seats shall be placed as far back from the screen as practicable along an accessible route; or

(ii)     If no Wheelchair and Companion Seats can be located within the Stadium Section, such Seats shall be located immediately in front of the Stadium Section, or if Physically Impracticable to do so, as far back from the screen as practicable along an accessible route.

(2)     Consultations Regarding Small Auditorium Exception – Acquired Theaters.  If AMC determines that application of the Small Auditorium exception would permit all ADA-Mandated Wheelchair and Companion seating to be located outside the Stadium Section in more than two Auditoriums that would otherwise require modification in any acquired Designated Neighborhood Theater, AMC

21

shall notify the Department in writing within 30 days of such determination.  The Parties thereafter shall consult in good faith regarding the feasibility of (a) selecting other Auditoriums within that Designated Neighborhood Theater for modifications that would permit location of at least one Wheelchair and Companion Seat within the Stadium Section in the requisite number of Auditoriums, and/or (b) developing other designs for modifications that would allow at least one Wheelchair and Companion seat to be relocated in the Stadium Section in the requisite number of Auditoriums.

(**3**)    Other Auditoriums in Designated Neighborhood Theaters.  In the remaining 25% of Auditoriums in each Designated Neighborhood Theater not subject to modification under § 4.2(A)(1), the Wheelchair and Companion Seats may remain in their respective existing locations provided these Seats otherwise comply with  §§ 3.1 - 3.6 of this Order.

(**4**)    Calculation of Accessibility Percentages.  If calculation of the auditorium accessibility percentages set forth in  §§ 4.2(A)(1) or 4.2(A)(3) results in other than a whole number, the resulting figure shall be rounded to the nearest whole number using standard mathematical principles.  For example, if a Theater Complex containing ten Stadium-Style Auditoriums has been identified as a Designated Neighborhood Theater, AMC would be required to ensure that eight of

22

these Auditoriums have Wheelchair and Companion Seats located no closer to the screen than the first row of the Stadium Section.

(**5**)   <u>Sale or Closure of Designated Neighborhood Theater</u>.  During the term of this Order, if a Designated Neighborhood Theater is sold or otherwise permanently ceases operating as a motion picture theater, AMC shall select another Neighborhood Theater within the same Neighborhood to serve as a substitute Designated Neighborhood Theater if that Neighborhood has more than one Neighborhood Theater.   If, on the other hand, the sale or closure of a Designated Neighborhood Theater leaves an existing Neighborhood with only one remaining Neighborhood Theater, then that Neighborhood Theater shall then be deemed a Theater Without Neighbors subject to the requirements set forth in § 4.3 of this Order.  AMC shall provide the Department of Justice with written notification of its substitution of a Designated Neighborhood Theater within 30 days of the completion of the applicable theater sale or closure.  Any such substitute Designated Neighborhood Theater shall be subject to the enhanced accessibility modifications specified in § 4.2(A).  The Parties do not presently anticipate the sale or closure of any Designated Neighborhood Theater that would, in turn, require AMC to select a Neighborhood Theater to serve as a substitute Designated Neighborhood Theater.

23

**(6)**   <u>Substitution of  Designated Neighborhood Theater</u>.  If a Future Construction Theater or Newly Acquired Theater is located within the geographical limits of an existing Neighborhood, AMC may, after consultation with the Department of Justice, elect to substitute such Theater Complex as the Designated Neighborhood Theater for that Neighborhood.  For purposes of this subsection, the "geographical limits" of an existing Neighborhood shall be deemed to include a 10-mile radius around each Neighborhood Theater or Designated Neighborhood Theater in that Neighborhood.  In the event AMC elects to make such substitute designation, AMC shall notify the Department in writing within 30 days of this election, and the Parties shall consult in good faith regarding the substitute designation.  The Department shall agree to this substitute designation except when there exist unusual geographic, demographic, or theater-specific circumstances within that Neighborhood.  Upon agreement of the Parties regarding such substitute designation, the requirements set forth in §§ 4.2(A) of this Order shall apply to this newly substituted Designated Neighborhood Theater.  If AMC does not elect to make such substitute designation, or the Parties do not mutually agree to such substitute designation, AMC shall ensure that such Future Construction Theater or Newly Acquired Theater otherwise complies with §§ 6

24

(Future Construction Theaters) or 5 (Newly Acquired Theaters) of this Order as applicable.

**B.**   Neighborhood Theaters.  Each AMC Neighborhood is comprised of one or more Neighborhood Theaters.  Neighborhood Theaters are subject to accessibility requirements specified in §§ 4.2(B)(1) – (2) below.

**(1)**   Accessibility Requirements.  The Wheelchair and Companion Seats in each Auditorium in a Neighborhood Theater may remain in their respective existing locations provided these Seats otherwise comply with  §§ 3.1 - 3.6 of this Consent Order.  Should any Auditoriums within a Neighborhood Theater require modification(s) to comply with this Order, AMC shall not be required to make such modification(s) in a manner that, as applicable,  involves demolition (in whole or in part) of Mini-Risers.

**(2)**   Sale or Closure of  Neighborhood Theater.  If AMC sells, closes, or otherwise permanently ceases movie exhibition operations at a particular Neighborhood Theater prior to the end of the term of this Consent Order, AMC shall have no further obligation to make modifications at that Theater Complex.  In addition, if the sale or closure of the Neighborhood Theater leaves its then-existing Neighborhood without any other Neighborhood Theaters, then the former Designated Neighborhood Theater for that Neighborhood shall be deemed a

25

Theater Without Neighbors subject to the requirements set forth in § 4.3 of this Order.

**4.3**    <u>Theaters Without Neighbors</u>.  The third category of Existing Theaters consists of those Theaters that do not have any other AMC Stadium-Style Theater Complexes in the same general geographical area or "Neighborhood."  A complete list of Theaters Without Neighbors as of the Effective Date of this Consent Order is set forth in Appendix D, which is herein expressly incorporated into the terms of this Order.  Theaters Without Neighbors are subject to the accessibility requirements specified in § 4.3(A) below.

**A.**    <u>Stadium Section Accessibility Requirements</u>.  Subject to §§ 4.3(A)(1) & (2) below, AMC shall ensure that no less than 25% of the Auditoriums in Theaters Without Neighbors have Wheelchair and Companion Seats located in the Stadium Section.  If Auditoriums in Theaters Without Neighbors require modification to comply with this requirement, AMC shall use reasonable efforts to select Auditoriums with a variety of sizes and/or seating configurations.  AMC shall relocate as many ADA-Mandated Wheelchair and Companion Seats as practicable (as specified in §§ 4.3(A)(1) & (2) below) in each such Auditorium no closer to the screen than the first row of the Stadium Section.   For Auditoriums in Theaters Without Neighbors that already have one or more Wheelchair and

26

Companion Seats located in the Stadium Section, the Wheelchair and Companion Seats may remain in their respective existing locations provided these Seats otherwise comply with §§ 3.1 - 3.6 of this Order.

(1)   <u>Small Auditorium Exception – AMC-Built Theaters</u>.  If, after taking into account modifications required by § 4.3(A)above to all large Auditoriums (*i.e.*, Auditoriums in which the first row of the Stadium Section contains sixteen (16) or more seats) in a Theater Without Neighbors designed and constructed by AMC (as identified in Appendix A), such Theater still does not satisfy the requisite Stadium Section accessibility percentage, then AMC shall, in the remaining Auditorium(s) that must be modified to meet this accessibility percentage, locate all ADA-Mandated Wheelchair and Companion Seats based on the following placement considerations in their respective order of priority:

(a)   First, in Auditoriums which have fourteen (14) or fifteen (15) seats in the first row of the Stadium Section, two Wheelchair and Companion Seats shall be placed no closer to the screen than the first Riser of the Stadium Section and the remaining Wheelchair and Companion Seats shall be placed as far back from the screen as practicable along an accessible route; or

(b)   Second, if such Theater still has not met the requisite

27

accessibility percentage after taking into account the modifications specified above for larger Auditoriums, all Wheelchair and Companion Seats shall be placed immediately in front of the Stadium Section, or if Physically Impracticable to do so, as far back from the screen as practicable along an accessible route in Auditoriums which have thirteen (13) or fewer seats in the first row of the Stadium Section.

(**2**)   <u>Small Auditorium Exception – Acquired Theaters</u>.  If, after making modifications required by § 4.3(A) to all larger Auditoriums (*i.e.*, Auditoriums with seating for 150 patrons or more), the size or configuration of a Small Auditorium within a Theater Without Neighbors acquired by AMC from a third-party theater company (*i.e.*, a Theater Complex that is not identified in Appendix A as having been designed and constructed by AMC) makes it Physically Impracticable to relocate all ADA-Mandated Wheelchair and Companion Seats within the Stadium Section, such Seats shall be relocated such that:

(**a**)   As many ADA-Mandated Wheelchair and Companion Seats as space permits are located no closer to the screen than the first row of the Stadium Section, and the remaining Wheelchair and Companion Seats shall be placed as far back from the screen as practicable along an accessible route; or

28

**(b)**     If no ADA-Mandated Wheelchair and Companion Seats can be located within the Stadium Section, such Seats shall be located immediately in front of the Stadium Section (on a Riser or Cross-Aisle as applicable), or if Physically Impracticable to do so, as far back from the screen as practicable along an accessible route.

**B.**     Consultations Regarding Small Auditorium Exception – Acquired Theaters.  If AMC determines that application of the Small Auditorium exception would permit all ADA-Mandated Wheelchair and Companion Seats to be located outside the Stadium Section in more than one Auditorium that would otherwise require modification in an acquired Theater Without Neighbors, AMC shall notify the Department in writing within 30 days of such determination.  The Parties thereafter shall consult in good faith regarding the feasibility of (a) selecting other Auditoriums within that Theater Complex for modifications that would permit location of at least one Wheelchair and Companion Seat within the Stadium Section, and/or (b) developing other designs for modification that would allow at least one Wheelchair and Companion Seat to be located in the Stadium Section in Auditoriums in that Theater Complex.

**C.**     Other Auditoriums In Theaters Without Neighbors.  In the remaining 75% of Auditoriums in each Theater Without Neighbors not subject to

modification under § 4.3(A), the Wheelchair and Companion Seats may remain in their respective existing locations provided these Seats otherwise comply with §§ 3.1 - 3.6 of this Order.

**D.**   Calculation of Accessibility Modification Percentages.  If the application of the accessibility percentages set forth in §§ 4.3(A) or 4.3(C) for any particular Theater Without Neighbors results in other than a whole number, the resulting figure shall be rounded to the nearest whole number using standard mathematical principles.  For example, if a Theater Without Neighbors contains ten stadium-style Auditoriums, AMC would be required to ensure that three of these Auditoriums have Wheelchair and Companion Seats located no closer to the screen than the first row of the Stadium Section.

**E.**   Sale or Closure of AMC Theater Without Neighbors.  If AMC sells, closes, or otherwise permanently ceases movie exhibition operations at a particular Theater Without Neighbors prior to the end of the term of this Consent Order, AMC shall have no further obligation to make modifications at that Theater Complex.

**4.4**   Other Specified Existing Theaters.  The final category of Existing Theaters is "Other Specified Existing Theaters," which shall be governed by the terms of this section.

**A.**     Accessibility Requirements for Other Specified Existing Theaters

The parties have jointly identified fifteen Theater Complexes that shall be treated as Other Specified Existing Theaters for purposes of this Consent Order. These fifteen complexes are, in alphabetical order by state:

| Theater Name | City | State |
| --- | --- | --- |
| AMC Indian River | Vero Beach | FL |
| AMC (GCC) Parkway Pointe 15 | Atlanta | GA |
| AMC (Kerasotes) Star Council Bluffs 17 | Council Bluffs | IA |
| AMC (Kerasotes) Showplace Edwardsville 12 | Edwardsville | IL |
| AMC (Kerasotes) Showplace Springfield 12 | Springfield | IL |
| AMC (Kerasotes) Showplace South Bend 16 | South Bend | IN |
| AMC (Kerasotes) Showplace Terre Haute 12 | Terre Haute | IN |
| AMC (Loews) White Marsh 16 | Baltimore | MD |
| AMC (Loews) Star Grand Rapids 18 | Grand Rapids | MI |
| AMC Easton Town Center 30 | Columbus | OH |
| AMC Lennox Town Center 24 | Columbus | OH |
| AMC Southroads 20 | Tulsa | OK |
| AMC River Park Square 20 | Spokane | WA |
| AMC (GCC) Mayfair Mall 18 | Wauwautosa | WI |

31

AMC (Kerasotes) Desert Star 15                    Lake Delton              WI

At the foregoing Other Specified Theaters, AMC shall make the modifications specified below in § 4.4(A)(1) – (8).  Unless otherwise expressly provided in this Order, AMC shall not be required, when modifying an Auditorium in an Other Specified Existing Theater in compliance with § 4.4, to make such modifications in a manner that, as applicable, involves demolition (in whole or in part) of Mini-Risers.  For purposes of this Consent Order, if an Other Specified Existing Theater, or Auditorium therein, is not listed below, AMC shall not be required to make any changes to the Wheelchair Spaces or Companion Seats in such Theaters, or Auditorium therein, so long as such seats otherwise comply with §§ 3.1 – 3.6 of this Order.

(1)   <u>AMC Indian River  (Vero Beach, FL)</u>

- <u>Auditoriums 1, 2, 3, 5, 6, 7, 8, 9, 10, 15, 16, 17, 18, 19, 20, 22, 23 and 24</u>:  The Wheelchair Spaces and Companion Seats in these Auditoriums may remain in their respective locations provided they otherwise comply with §§ 3.1, 3.2 & 3.4 – 3.6 of this Consent Order.

(2)   <u>AMC (Kerasotes) Star Council Bluffs 17  (Council Bluffs, IA)</u>

- <u>Auditoriums 4 and 13</u>:  AMC shall relocate the four Wheelchair Spaces in the existing row at the base of the Stadium Section within the same row in order to provide one adjacent Companion Seat for each such Space.

- **Auditoriums 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15 and 16**:
  AMC shall relocate the four Wheelchair Spaces in the existing
  row at the base of the Stadium Section as needed within the
  same row in order to provide one adjacent Companion Seat for
  each such Space.  AMC also shall remove a sufficient number
  of fixed seats in the preceding row to provide an accessible
  route to each Wheelchair Space.

**(3)**  AMC (Kerasotes) Showplace Edwardsville 12 (Edwardsville, IL)

- **Auditoriums 1 and 7**:  The Wheelchair Spaces and Companion
  Seats in these Auditoriums may remain in their respective
  locations provided they otherwise comply with §§ 3.1, 3.2(a),
  3.2(c) & 3.4 – 3.6 of this Consent Order.

- **Auditoriums 2, 4, 8 and 10**: AMC shall move one Wheelchair
  Space from the first row to the third row of the Traditional
  Section.  This relocated Wheelchair Space shall have one
  adjacent Companion Seat on the same floor level.  The
  remaining Wheelchair and Companion Seats in may remain in
  their respective locations provided they otherwise comply with
  §§ 3.1, 3.2(a), 3.2(c) & 3.4 – 3.6 of this Consent Order.

- **Auditoriums 3 and 9**:  AMC shall move two Wheelchair Spaces
  from the first row to the fifth row of the Traditional Section.
  Each of these relocated Wheelchair Spaces shall have one
  adjacent Companion Seat on the same floor level.  The
  remaining Wheelchair and Companion Seats may remain in
  their respective locations provided they otherwise comply with
  §§ 3.1, 3.2(a), 3.2(c) & 3.4 – 3.6 of this Consent Order.

- **Auditoriums 5 and 11**:  AMC shall move one Wheelchair Space
  from the first row to the fourth row of the Traditional Section.
  This relocated Wheelchair Space shall have one adjacent
  Companion Seat on the same floor level.  The remaining

33

Wheelchair and Companion Seats may remain in their respective locations provided they otherwise comply with §§ 3.1, 3.2(a), 3.2(c) & 3.4 – 3.6 of this Consent Order.

- <u>Auditoriums 6 and 12</u>: AMC shall move one Wheelchair Space from the first row to the third row of the Traditional Section. This relocated Wheelchair Space shall have one adjacent Companion Seat on the same floor level.  The remaining Wheelchair and Companion Seats may remain in their respective locations provided they otherwise comply with §§ 3.1, 3.2(a), 3.2(c) & 3.4 – 3.6 of this Consent Order.

**(4)**    <u>AMC (Kerasotes) Showplace South Bend 16  (South Bend, IN)</u>

- <u>Auditoriums 1, 2, 3, 4, 9, 10, 11 and 12</u>:  AMC shall move two Wheelchair Spaces from the first row to the last row of the Traditional Section.  Each of these relocated Wheelchair Spaces shall have one adjacent Companion Seat on the same floor level.

- <u>Auditoriums 5, 6, 7, 8, 13, 14, 15 and 16</u>:  AMC shall move one Wheelchair Space from the first row to the last row of the Traditional Section.  This relocated Wheelchair Space shall have one adjacent Companion Seat on the same floor level. The remaining Wheelchair and Companion Seats may remain in their respective locations provided they otherwise comply with §§ 3.1, 3.2 & 3.4 - 3.6 of this Consent Order.

**(5)**    <u>AMC (Loews) White Marsh 16 (Baltimore, MD)</u>

- <u>Auditoriums 1, 2, 3, 9 and 14</u>:  AMC shall designate two fixed seats, one at each end of row 3, as Companion Seats.  AMC shall also ensure that the ADA-Mandated Wheelchair and Companion Seats otherwise comply with §§ 3.1 – 3.6 of this Order.

34

- **Auditorium 5**:  AMC shall remove the Mini-Risers in front of the Stadium Section (rows 3 and 4) to provide sufficient space to create a Cross-Aisle at the back of the Sloped-Floor Section. AMC shall relocate the existing ADA-Mandated Wheelchair and Companion Seats within the same row (row 4) in such a way as to ensure that each Wheelchair Space has one adjacent Companion Seat on the same floor level and that there is an accessible route to each Wheelchair Space that does not travel through any other Wheelchair Space.  AMC also shall ensure that each of the six ADA-Mandated Wheelchair Spaces and their respective Companion Seats have an Unobstructed View of the screen pursuant to § 3.1 of this Order.

**(6)**   AMC (Loews) Star Grand Rapids 18  (Grand Rapids, MI)

- **Auditoriums 1, 2, 3, 8, 9 and 10**: The Wheelchair Spaces and Companion Seats in these Auditoriums may remain in their respective locations provided they otherwise comply with §§ 3.1, 3.2(a) & 3.4 – 3.6 of this Consent Order.

- **Auditoriums 4 and 7**:  AMC shall move two Wheelchair Spaces from the first row to the second row of the Traditional Section, which will result in four Wheelchair Spaces in this row.  Each of these relocated Wheelchair Spaces shall have one adjacent Companion Seat on the same floor level.  AMC also shall remove a sufficient number of fixed seats in the preceding row to ensure an Unobstructed View of the screen pursuant to § 3.1 of this Order for all Wheelchair and Companion Seats and to provide an accessible route to each Wheelchair Space.

- **Auditoriums 11, 12 and 13**: AMC shall move two Wheelchair Spaces to the third row of the Traditional Section.  Each of these relocated Wheelchair Spaces shall have one adjacent Companion Seat on the same floor level.  AMC also shall ensure that each of the four ADA-mandated Wheelchair and

35

Companion Seats in these Auditoriums have an Unobstructed View of the screen pursuant to § 3.1 of this Order.

- Auditoriums 14 and 18:  AMC shall move two Wheelchair Spaces from the first row to the sixth row of the Traditional Section.  AMC also shall relocate the two Wheelchair Spaces in the seventh row of the Traditional Section in such a way as to ensure an Unobstructed View of the screen for the existing two Wheelchair Spaces in row eight and to provide an accessible route to these latter Spaces that does not travel through any other Wheelchair Spaces.  Each of these four relocated Wheelchair Spaces shall have one adjacent Companion Seat on the same floor level.  AMC also shall ensure that each of the four ADA-mandated Wheelchair and Companion Seats in these Auditoriums have an Unobstructed View of the screen pursuant to § 3.1 of this Order.

- Auditorium 15:  AMC shall relocate the two Wheelchair Spaces in the fifth row of the Traditional Section in such a way as to ensure an Unobstructed View of the screen for the existing two Wheelchair Spaces in row six and to provide an accessible route to these latter Spaces that does not travel through any other Wheelchair Spaces.  Each of these two relocated Wheelchair Spaces shall have one adjacent Companion Seat on the same floor level.  AMC also shall ensure that each of the four ADA-mandated Wheelchair and Companion Seats in this Auditorium has an Unobstructed View of the screen pursuant to § 3.1 of this Order.

- Auditorium 16: AMC shall move two Wheelchair Spaces from the first row to the second row of the Traditional Section.  Each of these relocated Wheelchair Spaces shall have one adjacent Companion Seat on the same floor level.  AMC also shall ensure that each of the four ADA-mandated Wheelchair and

Companion Seats in this Auditorium has an Unobstructed View of the screen pursuant to § 3.1 of this Order.

- Auditorium 17:  AMC shall move two Wheelchair Spaces from the first row to the eighth row of the Traditional Section.  AMC also shall relocate the two Wheelchair Spaces in the ninth row of the Traditional Section in such a way as to ensure an Unobstructed View of the screen for the existing two Wheelchair Spaces in row ten and to provide an accessible route to these latter Spaces that does not travel through any other Wheelchair Spaces.  Each of these four relocated Wheelchair Spaces shall have one adjacent Companion Seat on the same floor level.  AMC also shall ensure that each of the seven ADA-mandated Wheelchair and Companion Seats in this Auditorium has an Unobstructed View of the screen pursuant to § 3.1 of this Order.

(7)   AMC Lennox Town Center 24 (Columbus, OH)

- Auditoriums 3, 5, 6, 8, 9. 10, 15, 16, 17, 19, 20 and 22:  AMC shall move one Wheelchair Space from the first row to the second row of the Traditional Section.  This relocated Wheelchair Space shall have one adjacent Companion Seat on the same floor level.  AMC also shall ensure that this relocated ADA-mandated Wheelchair and its respective Companion Seat have an Unobstructed View of the screen pursuant to § 3.1 of this Order. The remaining Wheelchair Spaces and Companion Seats in these Auditoriums may remain in their respective locations provided they otherwise comply with §§ 3.1, 3.2(a), 3.2(c) & 3.4 – 3.6 of this Consent Order.

- Auditoriums 4, 7, 11, 14, 18 and 21:  AMC shall move one Wheelchair Space from the first row to the third row of the Traditional Section.  This relocated Wheelchair Space shall have one adjacent Companion Seat on the same floor level.  AMC also shall ensure that this relocated ADA-mandated Wheelchair and its respective Companion Seat have an

37

Unobstructed View of the screen pursuant to § 3.1 of this Order. The remaining Wheelchair Spaces and Companion Seats in these Auditoriums may remain in their respective locations provided they otherwise comply with §§ 3.1, 3.2(a), 3.2(c) & 3.4 – 3.6 of this Consent Order.

**(8)** <u>AMC (Kerasotes) Desert Star 15  (Lake Delton, WI)</u>

- <u>Auditoriums "103" and "105"</u>:  AMC shall move two Wheelchair Spaces from the first row to the last row of the Traditional Section, which will result in four Wheelchair Spaces in this row. Each of these relocated Wheelchair Spaces shall have one adjacent Companion Seat on the same floor level.  AMC also shall remove a sufficient number of fixed seats in the preceding row to ensure an Unobstructed View of the screen pursuant to § 3.1 of this Order for all four Wheelchair and Companion Seats and to provide an accessible route to each Wheelchair Space.

- <u>Auditoriums "101", "102", "107" and "108"</u>:  AMC shall relocate as needed the four Wheelchair Spaces in the second row of the Traditional Section within the same row in order to provide one adjacent Companion Seat for each such Space. AMC also shall remove a sufficient number of fixed seats in the row immediately behind the second row to provide an accessible route to each Wheelchair Space.

- <u>Auditoriums Labeled as "New Theaters" 1, 2, 3, 4 and 5</u>:  AMC shall relocate as needed the four Wheelchair Spaces in the last row of the Traditional Section within the same row in order to provide one adjacent Companion Seat for each such Space. AMC also shall remove a sufficient number of fixed seats in the preceding row to provide an accessible route to each Wheelchair Space.

**B.** <u>AMC Discretion to Re-Designate Other Specified Existing Theaters</u>.

38

At any time during the term of this Consent Order, AMC shall be permitted, at its discretion, to re-designate any of the fifteen Other Specified Existing Theaters listed in § 4.4(A) as a Theater Without Neighbors, or, if then-located within the geographical limits of an AMC Neighborhood Theater, as a Neighborhood Theater.  For purposes of this section, the term "geographical limits" shall be deemed to include a 10-mile radius around each Neighborhood Theater, Designated Neighborhood Theater, Newly Acquired Theater, Future Construction Theater, or Theater Without Neighbors.  AMC shall provide the Department with written notice of its election to re-designate an Other Specified Existing Theater and, in such notice, shall also inform the Department whether such Theater shall thereafter be deemed a Theater Without Neighbors or a Neighborhood Theater. Upon such re-designation, the former Other Specified Existing Theater thereafter must comply, as applicable, with all respective requirements for Neighborhood Theaters or Theaters Without Neighbors as set forth in §§ 4.2(B) & 4.3 of this Order irrespective of any modifications otherwise specified in this section.

**C.**    <u>AMC Discretion to Replace Former Other Specified Existing Theaters</u>.  At any time during the term of this Consent Order, AMC shall be permitted, at its discretion, to replace a former Other Specified Existing Theater by designating another Newly Acquired Theater or Theater Without Neighbors as an

39

Other Specified Existing Theater ***provided that*** such replacement would not result in more than fifteen (15) Theater Complexes being designated as Other Specified Existing Theaters at any one time.  (In other words, replacement of former Other Specified Existing Theaters with other Theater Complexes must be done on a one-for-one basis.)

**D.**      Notice and Consultation Regarding Replacement of Former Other Specified Existing Theaters.  AMC shall provide the Department with written notice of its election to replace a former Other Specified Existing Theater with another Theater Complex (*i.e*., Acquired Theater or Theater Without Neighbors).  The Parties shall thereafter have forty-five (45) days to consult in good faith regarding the requisite accessibility modifications, if any, for such replacement Other Specified Existing Theater.  During these consultations, the Parties shall be guided by an understanding that, absent unique circumstances, AMC will not be required to satisfy accessibility requirements beyond those specified in § 4.2(B) of this Order for any Theater Complex replacing a former Other Specified Existing Theater.  If the Parties mutually agree on the appropriate accessibility modifications for such replacement Other Specified Existing Theater, then the Department shall create a written Appendix listing the agreed-upon accessibility modifications (if any) for such replacement Other Specified Existing Theater and

40

such Appendix shall be deemed part of this Consent Order.  If, on the other hand,

the Parties cannot agree on the appropriate accessibility modifications for such

replacement Other Specified Existing Theater prior to the end of the specified

consultation period, the Department thereafter shall provide written notice to AMC

within ten (10) days which specifies the accessibility modifications required for

such replacement Other Specified Existing Theater consistent with the terms of this

section.   AMC shall have thirty days (30) days from receipt of the Department's

notice either: (a) to inform the Department of the withdrawal of its proposed

replacement of the former Other Specified Existing Theater with such Theater

Complex; or (b) to file a motion with the Court seeking an order to substitute its

proffered accessibility modifications for such replacement Other Specified

Existing Theater in lieu of the modifications specified in the Department's notice.

If AMC takes neither action within thirty days, then the modifications specified in

the Department's notice will be deemed accepted by AMC and incorporated into

the terms of this Consent Order.

   **4.5**   Notice to Patrons of Modifications to Existing Theaters.  At each

Existing Theater that requires accessibility modifications to comply with §§ 4.1 to

4.4 of this Order, AMC shall provide written notice to patrons upon completion of

such modifications.  When these completed accessibility modifications result in

41

Stadium-Style Auditorium(s) that are newly accessible for patrons who use wheelchairs, then AMC's written notice shall inform patrons that such Theater Complex has recently undergone ADA modifications that make the Stadium Sections in certain Auditorium(s) accessible to patrons who use wheelchairs. Otherwise, when these completed accessibility modifications do not result in newly accessible Stadium Sections, AMC's written notice shall inform patrons that certain Auditorium(s) in such Theater Complex have recently undergone modifications to the placement and location of Wheelchair and Companion Seating.  AMC shall provide this written notice by posting the requisite information: (i) at the box office or in the lobby of the Theater Complex, and (ii) on AMC's website (www.amcentertainment.com) within the same section that provides information for potential patrons of that Theater Complex.  Notices posted at the box office or lobby of a Theater Complex shall be maintained for a period of not less than 90 days after completion of the accessibility modifications. Notices posted on AMC's website shall be maintained for a period of not less than six-months after completion of the accessibility modifications.

**5.**      **Newly Acquired Theaters**

For any Stadium-Style Theater Complex acquired by AMC after the Effective Date of this Consent Order, AMC shall ensure that such Newly Acquired

42

Theaters comply with the applicable requirements specified in § 5.1 - 5.4 below.

      **5.1**    <u>Newly Acquired Theaters Located In the Fifth Circuit</u>.   If a Newly Acquired Theater is located within the jurisdictional boundaries of the Fifth Circuit, such Theater shall be deemed a Fifth Circuit Theater subject to the requirements of § 4.1 of this Order.

      **5.2**    <u>Newly Acquired Theaters Within Existing Neighborhood</u>.  If a Newly Acquired Theater is located outside the jurisdictional boundaries of the Fifth Circuit, but within the geographical limits of a Neighborhood identified pursuant to § 4.2, AMC may, at its discretion: (a) elect to add this Newly Acquired Theater to that Neighborhood, or (ii) seek to substitute this Newly Acquired Theater as the Designated Neighborhood Theater for that Neighborhood after consultation with, and approval by, the Department of Justice pursuant to the procedures set forth in § 4.2(A)(6) of this Order.  For purposes of this section, the "geographical limits" of an existing Neighborhood shall be deemed to include a 10-mile radius around each Neighborhood Theater and Designated Neighborhood Theater comprising the Neighborhood.  If AMC does not elect to seek such substitution of the Newly Acquired Theater as the Designated Neighborhood Theater for the applicable Neighborhood, or the Parties do not jointly agree to such substitute designation,

43

AMC shall ensure that such Newly Acquired Theater otherwise complies with the requirements specified in § 4.2(B) of this Order.

**5.3**    Newly Acquired Theaters Outside Existing Neighborhoods.  If a Newly Acquired Theater is located outside both the jurisdictional boundaries of the Fifth Circuit and the geographical limits of all AMC Neighborhoods formed pursuant to § 4.2, AMC shall, as applicable, comply with the requirements specified in §§ 5.3(A) or 5.3(B) below.

**A.**    AMC Discretion to Create New Neighborhood When Acquired Theater Located In Close Proximity to Another AMC Stadium-Style Theater.  If a Newly Acquired Theater covered by § 5.3 is located within the geographical limits of at least one other Newly Acquired Theater (whether acquired simultaneously or during a separate transaction), Future Construction Theater, Theater Without Neighbors, or Other Specified Existing Theater, AMC may, at its discretion, elect to create a "new" AMC Neighborhood that shall be governed by § 4.2 of this Consent Order.  For purposes of this section, the term "geographical limits" shall be deemed to include a 10-mile radius around each Newly Acquired Theater, Future Construction Theater, Theater Without Neighbors or Other Specified Existing Theater.  In the event AMC elects to create a new Neighborhood, AMC shall notify the Department in writing within 30 days of such election and identify

44

the Designated Neighborhood Theater for this Neighborhood.  For any new Neighborhood created under this section, the Designated Neighborhood Theater shall comply with the requirements specified in § 4.2(A) of this Order, and the Neighborhood Theater(s) shall comply with the requirements specified in § 4.2(B) of this Order.  If AMC elects not to create a new Neighborhood, then the Newly Acquired Theater shall be subject to § 5.3(B) of this Order.

**B.**   <u>Newly Acquired Theaters Located Outside Neighborhoods</u>.  If a Newly Acquired Theater is located outside the jurisdictional boundaries of the Fifth Circuit, as well as outside all AMC Neighborhoods formed in accordance with §§ 4.2 or 5.3(A), such Newly Acquired Theater shall be subject to the requirements set forth in §§ 5.3(B)(1)-(3) below.

**(1)**   <u>Theaters With "Early" Opening Dates</u>

If a Newly Acquired Theater subject to § 5.3(B) had a certificate of occupancy issued prior to the Agreed Date, and no Auditorium therein underwent an alteration within the meaning of (and subject to any limitations in) 42 U.S.C. § 12183(a)(2) subsequently for which a certificate of occupancy was issued on or after the Agreed Date, then AMC shall ensure that such Theater complies with the requirements set forth in § 4.2(B) of this Order.

45

(**2**)     Theaters With Both "Early" and "Later" Opening Dates

If a Newly Acquired Theater subject to § 5.3(B) has a certificate of occupancy issued prior to the Agreed Date, but one or more Auditorium(s) therein underwent an alteration within the meaning of (and subject to any limitations in) 42 U.S.C. § 12183(a)(2) subsequently for which a certificate of occupancy was issued between the Agreed Date and the date of acquisition by AMC, then AMC shall ensure that the altered Auditorium(s) in such Theater comply with the requirements set forth in § 4.3 of this Order, ***provided, however***, that for purposes of this subsection only, AMC shall ensure that no less than 20% of these altered Auditoriums have Wheelchair and Companion Seats located in the Stadium Section; the remaining (unaltered) Auditoriums in such Newly Acquired Theater shall comply with the requirements set forth in § 4.2(B) of this Order.

(**3**)     Theaters With "Later" Opening Dates

If a Newly Acquired Theater subject to § 5.3(B) had a certificate of occupancy issued on or after the Agreed Date (but prior to the date of acquisition by AMC), then AMC shall ensure that such Theater complies with the requirements set forth in § 4.3 of this Order, ***provided, however***, that for purposes of this subsection only, AMC shall ensure that no less than

46

20% of the Auditoriums in such Theater have Wheelchair and Companion Seats located in the Stadium Section.

**5.4**   Notice to Patrons of Modifications to Newly Acquired Theaters.  At each Newly Acquired Theater that requires accessibility modifications to comply with §§ 5.1 to 5.3, AMC shall provide written notice to patrons upon completion of such modifications.  When these completed accessibility modifications result in Stadium-Style Auditorium(s) that are newly accessible for patrons who use wheelchairs, then AMC's written notice shall inform patrons that such Theater Complex has recently undergone ADA modifications that make the Stadium Sections in certain Auditorium(s) accessible to patrons who use wheelchairs. Otherwise, when these completed accessibility modifications do not result in newly accessible Stadium Sections, AMC's written notice shall inform patrons that certain Auditorium(s) in such Theater Complex has recently undergone modifications to the placement and location of Wheelchair and Companion Seating.  AMC shall provide this written notice by posting the requisite information (a) at the box office or in lobby of the Theater Complex, and (b) on AMC's website (www.amcentertainment.com) within the section providing movie information for potential patrons of that Theater Complex.  Notices posted at the box office or lobby of a Newly Acquired Theater shall be maintained for a period

47

of not less than 90 days after completion of the accessibility modifications. Notices posted on AMC's website shall be maintained for a period of not less than six months after completion of the accessibility modifications.

**6.      Standards for Future Construction Theaters**

All Future Construction Theaters shall comply with the requirements set forth in §§ 6.1 – 6.4 below.

**6.1**      Unobstructed View of the Screen.  Wheelchair and Companion Seats shall provide patrons in these Seats with an Unobstructed View of the screen.

**6.2**      Integration of Wheelchair Spaces.  Wheelchair Spaces shall be integrated into their respective row of seats and shall not be separated by any aisle or other break from the other seats in the same row.  Wheelchair Spaces shall be on the same floor level as other seats in the same row.

**6.3**      Relationship of Wheelchair and Companion Seating.  Wheelchair Spaces shall have at least one adjacent Companion Seat (*i.e.* 1:1 ratio).  Wheelchair Spaces and Companion Seats also shall be on the same floor level as other seats in the same row.

**6.4**      Location of Accessible Seating In Stadium Section.  AMC shall locate all ADA-Mandated Wheelchair Spaces and Companion Seats in Stadium-Style Auditoriums within Future Construction Theaters on a Riser or Cross-Aisle in the

48

Stadium Section and in compliance with the criteria set forth below in §§ 6.4(A) – (B).

**A.**  <u>Theaters Permitted Before Effective Date of Revised ADA Rules</u>.  If the date on which the last application for a building permit or permit extension for any Future Construction Theatre is certified as complete by a state, county, or local government (or, in those jurisdictions where the government does not certify completion of permit applications or extensions, is received by the state, county or local government) falls before March 15, 2012 (*i.e.*, eighteen months from the date of publication of the Department of Justice's revised ADA regulations in the Federal Register), <u>see</u> 28 C.F.R. § 36.406(a), then all ADA-mandated Wheelchair and Companion Seats in Stadium-Style Auditoriums in such Theatre shall be located:

(**1**)  in the rear 60% of seats provided in the Auditorium;

(**2**)  in the area of the Auditorium in which vertical viewing angles (as measured to the top of the screen) are from the 50th to the 100th percentile of vertical viewing angles for all seats as ranked from the seats in the first row (1st percentile) to seats in the back row (100th percentile);

(**3**)  in the area of the Auditorium in which vertical viewing angles (as measured to the top of the screen) for the Wheelchair Spaces are equivalent to, or

49

less than, the average vertical viewing angle provided for other members of the general public seated in all fixed seating in that Auditorium; or

(4)   in compliance with § 36.406(f)(4) of the revised ADA regulations  (to be codified at 28 C.F.R. § 36.406(f)(4)).

**B.   Theaters Permitted After Effective Date of Revised ADA Rules.**  If the date on which the last application for a building permit or permit extension for any Future Construction Theatre is certified as complete by a state, county, or local government (or, in those jurisdictions where the government does not certify completion of permit applications or extensions, is received by the state, county or local government) falls on or after March 15, 2012, then AMC shall locate all ADA-Mandated Wheelchair and Companion Seats in Stadium-Style Auditoriums in such Theatre in compliance with § 36.406(f)(4) of the revised ADA regulations (to be codified at 28 C.F.R. § 36.406(f)(4)), and shall also comply with §§ 221.2, 221.3, 802.2 and 803.3 of the 2010 Standards (codified at 36 C.F.R., pt. 1191), as applicable.

**7.   Required Time Frames for Implementation of Consent Order**

**7.1   Modifications to Existing Theaters.**  Except as provided in § 7.2 below, modifications to Existing Theaters required by § 4 of this Consent Order

50

shall be completed within five years of the Effective Date, consistent with the following:

**A.**     One-fifth (1/5) of the Theaters Complexes shall have modifications completed within the first 12 months from the Effective Date of this Consent Order;

**B.**     Two-fifths (2/5) of the Theaters Complexes shall have modifications completed within the first 24 months from the Effective Date of this Consent Order;

**C.**     Three-fifths (3/5) of the Theaters Complexes shall have modifications completed within the first 36 months from the Effective Date of this Consent Order;

**D.**     Four-fifths (4/5) of the Theaters Complexes shall have modifications completed within the first 48 months from the Effective Date of this Consent Order; and

**E.**     Modifications to all Theater Complexes shall be completed within 60 months from the Effective Date of this Consent Order.

**7.2**     <u>Expedited Modifications to Certain Existing Theaters</u>.  Within twelve (12) months of the Effective Date of this Order, AMC shall complete any modifications required under the terms of this Order at the following Existing

51

Theaters: Ahwatukee 24 (Phoenix, AZ); Arizona Center 24 (Phoenix, AZ); Arrowhead 14 (Glendale, AZ); Creve Coeur 12 (Creve Coeur, MO); Covina 30 (Covina, CA); Deer Valley 30 (Phoenix, AZ); Esplanade 14 (Phoenix, AZ); Norwalk 20, CA (Norwalk, CA); Ontario Mills 30 (Ontario, CA); and Promenade 16 (Woodland Hills, CA).  AMC may complete the modifications at these Theaters in any order, and all such modifications shall be included in, and considered part of, the modification time frames set forth in §§ 7.1(A) – (E) above.

**7.3**   Modifications to Newly Acquired Theaters.  AMC shall complete all modifications to Newly Acquired Theaters required under §§  5.1 – 5.3 prior to the end of the term of this Order.  AMC shall complete such modifications proportionally over the period of time remaining between the completion date of the transaction in which such Theater (or group of Theaters) were acquired and the latter to occur of (a) the end of the term of this Order or (b) one year from such transaction completion date.

**7.4**   Future Construction Theater Requirements.  The requirements set forth in § 6 of this Consent Order for Future Construction Theaters shall take effect immediately upon the Effective Date of this Order.

**8.**     **Annual Reports and Other Compliance Matters**

   **8.1**     AMC Annual Reports.  Twelve months after the Effective Date, and every twelve months thereafter for the term of this Order, AMC shall provide annual written reports to the Department of Justice that (a) detail modifications to Existing and Newly Acquired Theaters completed during the preceding annual period, and (b) identify the opening, closing, sale, or acquisition of any Stadium-Style Theaters during the preceding annual period.  These annual reports shall include sufficient documentation to permit the Department to verify, as applicable, either: (a) the nature and extent of completed modifications to Auditoriums in Existing Theaters or Newly Acquired Theaters to bring them into compliance with this Order; or (b) the compliance of Auditoriums in Existing Theaters or Newly Acquired Theaters for which no modifications were necessary to comply with this Order.  Such documentation shall include, when available: architectural plans; shop drawings; and, photographs.  AMC may, at its discretion, submit any portion of these annual reports and supporting documentation in any standard (open) digital format such as Adobe PDF or JPEG image files.

   **8.2**     Inspection of Covered Theaters.  Throughout the term of this Consent Order, Department of Justice representatives may, upon reasonable notice, inspect any AMC Stadium-Style Theater covered by this Consent Order.  Such inspections

53

shall be conducted during non-show times within ten (10) business days of the

Department's notice and shall be limited to areas or matters relating to the

requirements set forth in this Order.  AMC may, at its discretion, elect to have a

corporate representative and/or legal counsel present at any such inspection.

**8.3**   <u>Procedures for Resolving Compliance Issues</u>.  The Department of

Justice may review AMC's compliance with this Consent Order at any time.  If the

Department believes that AMC is not in compliance with any material term of this

Order, the Department shall notify AMC in writing of the alleged noncompliance

and attempt to seek a reasonable resolution of the matter.  AMC shall have sixty

(60) days in which to respond to the Department's written notice with objections

and/or schedule for correction of agreed-upon deficiencies.  The Parties thereafter

shall have sixty (60) days in which to reach a mutually agreeable resolution of the

compliance matters identified in the Department's written notice.  If the Parties are

unable to reach a resolution within this time period, the Department may, at its

discretion, seek appropriate relief from this Court.  The Parties hereby agree to use

their respective best efforts to resolve disputes regarding compliance or

enforcement of this Order without resort to judicial resolution.  Therefore, the

Parties presently anticipate that resort to judicial dispute resolution will

infrequently (if ever) occur during the term of this Order.  Failure by the

Department to seek enforcement of this entire Consent Order, or any provision or deadline herein, shall not be construed as a waiver of the Department's right to enforce other provisions or deadlines in this Order.

**8.4**   Delivery of Notice to the Parties.  All written notices and reports required by this Consent Order shall be sent to the Parties, or such other person as the Parties may designate in writing in the future, by overnight delivery and by electronic mail to the following addresses:

**For notices to the Department of Justice**:
John L. Wodatch, Chief
Disability Rights Section
Civil Rights Division
United States Department of Justice
1425 NY Ave Bldg. – Rm. 4039
950 Pennsylvania Avenue, NW
Washington, DC 20530
john.wodatch@usdoj.gov

Gretchen Jacobs
Senior Trial Attorney
Disability Rights Section
Civil Rights Division
United States Department of Justice
1425 NY Ave Bldg. – Rm. 4043
950 Pennsylvania Avenue, NW
Washington, DC 2053
gretchen.jacobs@usdoj.gov

55

**For notices to AMC Entertainment, Inc. and America Multi-Cinema, Inc.**:

Kevin M. Connor
Senior Vice President, Legal
920 Main Street
Kansas City, MO  64105

Edwin F. Gladbach
Vice President, Legal
920 Main Street
Kansas City, MO  64105

Laura M. Franze
Hunton & Williams LLP
550 South Hope Street – Suite 2000
Los Angeles, CA  90071

**9.**      **Monetary Relief for DOJ Complainants**

**9.1**      <u>AMC Monetary Payment</u>.  AMC shall provide monetary compensation to DOJ Complainants in an amount not to exceed $50,000.00.

**9.2**      <u>Identification of DOJ Complainants</u>.  The United States shall have sole discretion to determine the individual DOJ Complainants and their respective monetary compensation.  Within one-hundred and eighty (180) days of the Effective Date, the United States shall provide to AMC, for each respective DOJ Complainant: a name and mailing address; an executed release form (a blank version of which is attached as Appendix F); and, the amount of his or her

respective monetary award.  The United States may, at its discretion, provide AMC with the foregoing information on either a rolling basis or a one-time basis within this six-month period.  As specified in § 9.1 above, AMC's total monetary obligation to DOJ Complainants shall not exceed $50,000.00.

**9.3**   <u>Disbursement of Checks</u>.  Within thirty (30) days of receiving the information specified in § 9.2 above regarding a DOJ Complainant, AMC shall send to that DOJ Complainant, by Registered Mail, a check for the full amount of his or her respective monetary award.  AMC shall make such checks payable to the respective DOJ Complainant who executed the release, or on whose behalf the release was executed.  Additionally, simultaneous with this mailing, AMC also shall provide the United States with courtesy copies of the Registered Mail receipt and check mailed to each DOJ Complainant.

**10.**   **Payment to the United States**

Within thirty (30) days of the Effective Date, defendants AMC Entertainment Inc. and American Multi-Cinema, Inc. shall each make a payment in the amount of twelve thousand and five hundred dollars ($12,500) to the United States pursuant to 42 U.S.C. § 12188(b)(2)(C) and 28 C.F.R. § 36.504(a)(3)(i).

**11.    Miscellaneous Provisions**

**11.1**    Entire Consent Order.  This Consent Order and its exhibits and appendices constitute the entire agreement between the Parties on the matters raised herein, and no other statement, promise, or agreement, either written or oral, made by any of the Parties or agents of any of the Parties, that is not expressly set forth in this Order, shall be enforceable regarding the matters raised herein.

**11.2**    Public Document.  This Consent Order is a public document.  A copy of this Order, and any information incorporated herein, may be made available to any person.

**11.3**    Consent Order Binding on Parties and Successors in Interest.  This Consent Order is binding on the United States, AMC, and any successors in interest.  AMC shall have an affirmative duty to notify any successors in interest to any property, liabilities, or interests covered by this Consent Order of the existence and terms of this Order.

**11.4**    Other Companies Or Claimants.  Except as provided in § 11.3 above, the terms of this Consent Order shall not apply to any movie theater company or circuit other than AMC.  No persons or entities other than the Parties shall have standing to enforce any provision in this Consent Order.

**11.5**    Term of the Consent Order.

**A.**     This Consent Order shall remain in full force and effect for a period of five (5) years commencing on the Effective Date.  The Court shall retain jurisdiction to enforce provisions of this Consent Order during the entire term of this Order.

**B.**     AMC may, at its discretion, seek the Department's consent to renew this Consent Order for an additional period of not more than five (5) years beyond the five-year initial term.  AMC shall notify the Department in writing of any such renewal request at any time after the fourth (4th) year of the term of this Order. The Department shall not unreasonably withhold or delay its consent for renewal of the Consent Order so long as AMC, at the time of its request, is not materially non-compliant with its obligations under this Order.  If the Department has not responded within fifteen (15) days of receiving a renewal request from AMC or otherwise withholds its consent for renewal, AMC may seek an order from the Court extending this Consent Order for an additional period of not more than five (5) years.  Any renewal term for the Consent Order shall be governed by the same substantive terms and conditions as specified in this Order unless the Parties mutually agree to modify such terms or conditions.

**11.6**   <u>Severability</u>.  If any nonmaterial term of this Consent Order is determined by any court to be unenforceable, the other terms of this Order shall

59

nonetheless remain in full force and effect, unless it is determined that the provisions deemed unenforceable consist of material provisions which amounted to the original consideration for the adversely affected party in entering into this Consent Order.

**11.7** Signatories Bind Parties.  Signatories on behalf of the Parties represent that they are authorized to bind the Parties to this Consent Order.

**11.8** Force Majeure.  Whenever a day is appointed in this Consent Order on which, or a period of time is appointed within which, either Party is required to do or complete any act, matter, or thing, the time for doing or completion thereof shall be extended by a period of time equal to the number of days on or during which either Party is prevented from, or is unreasonably interfered with, the doing or completion of such act, matter, or thing as a result of strikes, lock-outs, embargoes, unavailability of labor or materials, wars, insurrections, rebellions, declarations of national emergencies, acts of God, or other causes beyond the reasonable control of the Party.  Financial inability to satisfy the terms of the Order does not fall within the exceptional circumstances covered by this subsection that warrant additional time for performance.

**11.9** No Protection for Theaters Not Covered by Consent Order.  The Consent Order provides no legal protection for, nor releases any potential ADA

liability with respect to, any Stadium-Style Theater Complex constructed, purchased, leased, or acquired by AMC that is not covered by the terms of this Order.

DATED: November 18, 2010

Respectfully submitted,


THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division
SAMUEL BAGENSTOS
Deputy Assistant Attorney General
Civil Rights Division
ANDRÉ BIROTTE, Jr.
United States Attorney
JOHN L. WODATCH, Chief
PHILIP L. BREEN, Special Legal Counsel
RENEE M. WOHLENHAUS, Deputy Chief
Disability Rights Section




_____

GRETCHEN E. JACOBS
PHYLLIS COHEN

Disability Rights Section
Civil Rights Division
U.S. Department of Justice
Counsel for Plaintiff
United States of America

62

DATED: November 12, 2010

Respectfully submitted,

_____
LAURA M. FRANZE
M. BRETT BURNS

Hunton & Williams LLP
550 South Hope Street – Suite 2000
Los Angeles, CA  90071

Counsel for Defendants American Multi-
Cinema, Inc. and AMC Entertainment, Inc.

Pursuant to stipulation and for good cause shown herein, IT IS SO ORDERED.

DATED:  November 29, 2010

_____
Hon. S. JAMES OTERO
United States District Court